### ROTHMAN et al. v. GREYHOUND CORPORATION et al.

No. 5838.

United States Court of Appeals
Fourth Circuit.

Argued June 16, 1949.

Decided July 21, 1949.

894

Nathan Hamburger and Hilary W. Gans, Baltimore, Md., for appellants.

Joseph R. Byrnes, Baltimore, Md. (David P. Gordon and Levy, Byrnes & Gordon Baltimore, Md. on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Greyhound Cab Company, a co-partnership which operates a large fleet of taxicabs in Baltimore, appeals from a judgment of the District Court enjoining it from using the name "Greyhound" and the picture of a running greyhound dog, the trade name and symbol used by the Greyhound Corporation and Pennsylvania Greyhound Lines, Inc., upon the motor buses which they operate on a national scale. It is conceded that the name and symbol constitute a valid trade mark originated and owned by the Bus Company, and misappropriated by the Cab Company, and the only question for decision is whether the former has lost the right to injunctive relief in consequence of the latter's wrongful conduct.

The Greyhound Corporation, together with twenty-three subsidiaries and affiliates, operates a nation wide motor bus service and has served the Baltimore area since 1928. Shortly after its formation in 1926, it painted its buses blue and white and displayed the name "Greyhound" and the dog symbol on all its buses, terminals, lunchrooms, uniforms, stationery and advertisements. By 1936 the business had become a unified transportation system, covering virtually the entire United States, and today the buses are known under their familiar name and appearance throughout the nation.

The Greyhound name and symbol first appeared on taxicabs in Baltimore in 1932 when one Ralph Adelman saw them on a Greyhound bus and appropriated them without authority for use on four taxicabs which he operated in the city. He sold his cabs and went out of business on December 31, 1933, and on January 14, 1934, presumed to give to the defendant co-partners the right to use the name in the corporate title of the Greyhound Cab Company, Inc., which they were then organizing. When Adelman first appropriated the trade mark, the Bus Company was using seventy-four buses to service the Baltimore area, and in 1934 it was maintaining forty-six regular schedules a day to and from the city.

The Bus Company made no protest about the defendants' use of the Greyhound name and symbol until 1940. It then requested them to desist and when they failed to comply, filed suit in the court below in February, 1941. While this suit was pending, the Cab Company was dissolved and its assets were transferred to the defendants trading as a partnership under the name of Greyhound Cab Company. The Greyhound cabs were thereupon brought into the Diamond Cab system, a federation of independent owners organized in the interest of economy of operation and effectiveness of advertising. There were then seventy-four Greyhound cabs operating in Baltimore which constituted about 25 per cent. of the total number of cabs in the Diamond federation. They were re-

painted in accordance with the Diamond system of decoration. The running dog symbol was eliminated and a conspicuous red diamond with the words "Diamond Cab" was painted on the rear doors. The only indicia of Greyhound ownership were the words "Greyhound Cab" which were painted in smaller black lettering on the front doors in order to comply with the requirement of the Maryland Public Service Commission that a cab owner's name be inscribed on the vehicle.

As the result of this change, the Bus Company on January 29, 1942, entered a voluntary dismissal without prejudice of its suit in the District Court. It was not thought that the inconspicuous use of the word "Greyhound" on cabs identified in the public mind as Diamond would lead to confusion. In the fall of 1943, however, the Greyhound cabs were withdrawn from the Diamond system and the cabs were repainted and the Greyhound name and symbol were displayed as before, except that the name "Greyhound" appeared on the sides of the cabs in larger letters than had been previously used. No protest was made about this renewed display of plaintiffs' name and symbol until the summer of 1947, the delay, according to the plaintiffs, being due to the fact that the change was not called to the attention of top officials until that time, presumably because of the pressure of the war emergency. The present suit was brought on July 20, 1948.

The defendants do not contest the conclusion of the District Judge that the Greyhound's name and symbol are distinctive, and should be given a wide range of protection. See Greyhound Corporation v. Goberna, 5 Cir., 128 F.2d 806. Nor do they seriously question his conclusion that they are guilty of infringement and that when they "began using the name 'Greyhound' and the running dog symbol, they were fully aware of the fact that the plaintiffs had been using them for a number of years." The defendants' sole contention is that the plaintiff has been guilty of such acquiescence and laches as to be estopped from seeking injunctive relief.

■ It is clear that the plaintiffs' dismissal of the 1941 suit, without exacting a formal agreement from the Cab Company not to return to its previous use of the trade mark, did not constitute acquiescence by the plaintiff in defendants' subsequent infringement. The suit was dismissed after the use of the Greyhound symbol on the cabs had been abandoned and the inconspicuous use of the name was not deemed sufficiently prejudicial to warrant further court action. The fact that the dismissal was taken without prejudice indicates that the plaintiff did not acquiesce in a return to the original decoration of the cabs but reserved the right to take such further action as might become necessary.

The only period which is material on the questions of laches and estoppel is the period from 1943 to 1947 when the plaintiff made its first protest against the renewed use of the name. We assume that during this time the plaintiff had notice of defendants' new infringement since it is inconceivable that a fleet of seventy-four cabs operating twenty-four hours a day should go unnoticed by responsible officials of the Bus Company. During this period the defendants increased their fleet from seventy-four to one hundred and fourteen cabs and spent more that $8,000 in advertising, and the Bus Company spent several times this amount on advertising in Baltimore.

■ Notwithstanding the plaintiff's delay in making a protest, we agree with the conclusion of the District Judge that under the circumstances the plaintiff, which seeks no recovery for past infringement, did not forfeit the right to prohibit the continued misappropriation of its property in the future. It is settled that mere delay in seeking relief is no bar to an injunction when the infringer has had knowledge of the fact that he is infringing and has deliberately set out to capitalize on the good will of the owner. In Menendez v. Holt, 128 U.S. 514, 523–524, 9 S.Ct. 143, 145, 32 L.Ed. 526, it was said:

"The intentional use of another's trademark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent, and the wrong is a continuing one, demanding restraint by ju-

dicial interposition when properly invoked. Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself. * * *

"So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it; but so far as the act is in progress, and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise. At the same time, as it is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it, a court might hesitate as to the measure of relief, where the use by others for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand."

The decisions have followed this pronouncement. Indeed it has been held that mere delay will not forfeit the right to injunction whether the infringer has been innocent or fraudulent, for the misuse of the owner's property is the same in either case and the infringer must show some good reason why he should not be stopped. Dwinnell-Wright Co. v. White House Milk Co., 2 Cir., 132 F.2d 822. The contest has come at this point, and the courts have had to decide in each case upon its peculiar circumstances whether the greater equity lay in the enforcement of the right of the trade-mark owner to exclusive use of the name or in the recognition of the substantial business that the infringer may have built up in reliance upon the owner's inaction.

In the light of the authorities noted in the margin,[1] we are of opinion that the Bus Company is entitled to the protection of the courts under the circumstances of this case. The intention of the defendants from the beginning to infringe upon the plaintiffs' rights is so clear, and their renewed misappropriation of the plaintiffs' property in 1943, after they had been formally warned by the institution of the first suit, was so flagrant and inexcusable, that it would be unjust to award them a share of the plaintiffs' property merely because the present suit was delayed. It was very plain to the defendants after this warning that they were building their business upon a fraud so far as the name was concerned, and this circumstance far outweighs the effect of any loss they may suffer from the enforcement of the injunctive order as well as the fact that their business was not in direct competition with the plaintiffs'. See, Greyhound Corporation v. Goberna, 5 Cir., 128 F.2d 806; cf. Restatement of Torts, § 751, Comment d. Indeed it is not clear that their loss will be very great. The changes of name from Greyhound to Diamond and back again to Greyhound do not seem to have materially interfered with

1 Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 32 L.R.A., N.S., 274 (nine year delay after notice of deliberate infringement, injunction granted but accounting denied); Thos. G. Carroll & Son v. McIlwaine & Baldwin, C.C., 171 F. 125, affirmed, 2 Cir., 183 F. 22, (innocent junior user built up extensive market outside senior user's territory, twenty-four year delay after notice of infringement, injunction denied); Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 419, 36 S.Ct. 357, 362, 60 L.Ed. 713 ("As to laches and acquiescence, it has been repeatedly held, in cases where defendants acted fraudulently or with knowledge of plaintiff's rights, that relief by injunction would be accorded although an accounting of profits should be denied"); Reid, Murdoch & Co. v. H. P. Coffee Co., 8 Cir., 48 F.2d 817 (deliberate infringement, five year delay between notice and suit, no substantial expenditure for good will by infringer, injunction granted); Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., 4 Cir., 254 F. 553 (expenditure with knowledge of plaintiff of large sum by deliberate infringer to develop good will in market outside plaintiffs' territory, injunction denied as to this outside territory); Aunt Jemima Mills Co. v. Rigney, 2 Cir., 247 F. 407, L.R.A.1918C, 1039 (deliberate infringement, non-competitive product but confusion of origin possible, eight year delay after notice of infringement, injunction granted); Fruit Industries, Ltd. v. Bisceglia, 3 Cir., 101 F.2d 752 (innocent junior user built extensive distant market, delay of three years after notice of infringement, injunction denied). See Restatement of Torts, § 751.

their growth and prosperity. The loss which they will sustain makes no appeal to the conscience of the court for it is attributable to their intentional fraud quite as much as to the plaintiffs' delay.

Affirmed.