**PAN AMERICAN WORLD AIRWAYS, Inc. v. CLIPPER VAN LINES, Inc. et al.**

Civ. No. 10673.

United States District Court
E. D. New York.

June 21, 1951.

Campbell, Brumbaugh, Free & Graves, New York City (Walter H. Free, Henry J. Friendly, New York City, Joseph J. Cantwell, and Gertrude M. Kennedy, New York City, of counsel), for plaintiff's motion; opposed to defendant's cross motion.

Milbank, Tweed, Hope & Hadley, New York City (Cadick & Burns, Indianapolis, Ind., of counsel), opposed to plaintiff's motion; for defendant's cross motion.

BYERS, District Judge.

These are cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which present interesting questions of trade-mark infringement and unfair competition, as alleged by plaintiff and denied by the sole defendant now in the case.

The record, as made in addition to the pleadings, consists of requests for admission and answers by both parties, and voluminous affidavits pro and con, from all of which it sufficiently appears that there is no issue of fact requiring the taking of testimony, and that the matters in controversy involve (a) the alleged infringement of plaintiff's registered trade-mark "Clipper", and (b) the use of that word in defendant's corporate title and its advertising, and the display of that word in association with a pictorial representation of an airplane; and its occasional reference to the word as its own unregistered trademark.

The material facts may thus be summarized:

The plaintiff has been a New York corporation since 1927 and in 1931 adopted the word "Clipper" to identify in the public mind the transportation service by aircraft it was operating. Since then the word has been prominently displayed by the plaintiff on its aircraft, and on trucks and coaches used by it to carry to its air fields both passengers and freight, and in all advertising media employed to expand its business. The cargo business of the plaintiff since 1945 is stated to have been of the average annual figure of $12,692,317.44, which is accepted as indicative of the expansion of that department of its affairs.

Since the plaintiff's Clipper planes cannot themselves collect freight at points of origin, it is obvious that carriage to the air fields has to be made by trucks which are operated by plaintiff's shipping agents; the latter have come to be known according to plaintiff's designation, as "Clipper Cargo" agents, located in 25 of the United States. That designation has also been employed continuously since 1931 by plaintiff on its hangars, and on signs at the offices where freight is received, and in sundry advertisements.

The defendant is a corporation of Indiana, organized in 1945, which operated until October 11, 1950, as the lessee of Jackson Moving & Storage Co., a Missouri corporation. On the latter date it was recognized by the Interstate Commerce Commission as the transferee and assignee of the Jackson Certificate of Necessity, and has since so functioned, and its territory has been expanded by order of that Commission. The defendant's business is to operate large moving vans for the transportation of household goods as defined in 17 M.C.C. 467.

The defendant selected the word "Clipper" as an adjective in its corporate name, to indicate that its agents' moving vans, and the services performed, could be expected to live up to whatever the word had come to import.

The defendant's vans are owned and operated by its agents designated as "Clipper Agents" according to an elaborate agency plan (Ex. 13, Answers to plaintiff's interrogatories) and the vans seem to be painted white, with the word "Clipper" in large and conspicuous letters at the front and sides, followed as to the latter only with the words "Van Lines, Inc." in entirely visible but smaller and contrasting form of letters.

These vans operate in part in the same states in which the plaintiff's agents' trucks collect freight for transportation on the Pan American Clipper Cargo planes.

In addition to using the word "Clipper" as stated, the defendant has caused to be painted on the sides of the vans so operated, the picture of an airplane in flight, disposed below its corporate name, and which is large enough to form a conspicuous part of the entire design so presented to the eye. The defendant's advertising contains photographic reproductions of the vans so decorated.

The relation between the service performed by even a speedy moving van, as contrasted with that of an airplane, is less than obvious in any literal sense. The defendant's justification for employing this pictorial device is labored and unconvincing, in view of the knowledge with which it was chargeable in 1945 of the nature, scope and volume of the plaintiff's cargo carrying business, as it had developed over the period of fourteen years.

The questions for decision are:

A. Has the defendant infringed the plaintiff's trade-mark "Clipper"?

B. Does the defendant's use of the trade-mark and its display in conjunction with an airplane constitute unfair competition?

As to the first, the Trade-Mark Act of 1946, Title 15 U.S.C.A. § 1114, points out that an unauthorized reproduction of a registered trade-mark in connection with " * * * services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such * * * services" shall give rise to civil action. It is argued for plaintiff that the use of its trade-mark by defendant which has been related, is likely to cause confusion among shippers of freight for air carriage, as to the actual purveyor of the land transport service incident thereto.

The defendant argues that no such confusion has been shown, except in two instances for which there was no excuse; and that since the defendant hauls household goods only, there is no competition between the trucking service provided by plaintiff, and its own activity. Whether such confusion is likely can scarcely be stated with any degree of assurance. I should suppose that a householder might on occasion find it necessary to remove his home furnishings in bulk and by plane, in spite of the probable high cost; and if this is a plausible concept, he might well be in doubt as to which of these two land transport agencies was indeed operated as a subsidiary of the Clipper Cargo Service. That would be possible, of course, but whether it would be likely is a matter of prophecy. Certainly no such incident appears in this record.

■ The defendant's business, however, is not so restricted as the term "household goods" might seem to imply: The following is quoted from "Practices of Motor Common Carriers of Household Goods", 17 M.C.C. 467: "The term 'household goods' means * * * furniture, fixtures, equipment and the property of stores, offices * * * or other establishments *when a part of the stock, equipment, or supply of such stores* (emphasis added), * * * or other establishments; * * *." [Interstate Com.Reg. 49 C.F.R. 176.1.]

Since part of the stock of a store is comprehended in the above, it would seem that any article or articles so constituting stock would be appropriate for haulage by defendant's authorized service; this means that the likelihood of confusion cannot be dismissed from consideration by mere resort to the expression "household goods".

In certain trade-mark cases it has been held that actual confusion need not be shown: LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, at page 117; Standard Brands, Inc., v. Smidler, 2 Cir., 151 F.2d 34, at page 37. Both cases dealt with articles of commerce, not services.

The exposition of this entire subject in the case of S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 175 F.2d 176, 180, in light of the Lanham Act (under which plaintiff's registration was had on the Principal Register, i. e., not Sec. 2(f) dealing with descriptive marks that have achieved a secondary meaning) contains a summary appraisal of the decisions which have dealt with the manufacture and sale of articles which might fall into either competitive or non-competitive categories, and the extent to which a given plaintiff might be deemed to be entitled to protection, or not.

That plaintiff (Johnson) failed for reasons which have no parallel here, since the facts are entirely remote. It seems to me that much that was written, to demonstrate why that plaintiff could not succeed, would

support the opposite inference as to Pan American. There is no family name here as to which a good-will has been built by the defendant; while there is no indication that this plaintiff is engaged in moving "household goods" as the sole occupation of its trucks, there is no reason why it should not be called upon to do that very thing upon appropriate occasion; which means that to this plaintiff there should not be ascribed the threat of the reach of a "choking hand into a market not its own, and to deprive the defendants of an interest, natural and proper in its origin * * *".

It is the latter expression which I find difficult to assimilate to the evidence here.

Seemingly the most recent case to discuss the subject of likelihood of confusion where the parties were not selling in competition is Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 180 F.2d 250, 251. In affirming the denial of a temporary injunction to plaintiff, the Court pointed out that the latter's name had not established a secondary meaning concerning its products. Also that its possible future efforts in the field of defendant's activity, or the possible damage to its general reputation if "defendant's reputation in the trade was bad" though sufficient in some cases "to give the first user of a name or mark the power to compel anyone, who uses it later, to distinguish his wares", were not deemed to move the Court in that plaintiff's favor. The final paragraphs in the opinion discuss why the decision below was sustained; they follow this significant passage: "In all such cases there is only one question: what damage to the first user will the second do by the use of the first user's mark, or name or make-up, and what burden will it impose upon the second user effectively to distinguish the goods?"

Here we substitute "service" for "goods" and in seeking to apply the test so announced it is helpful to consult the following cases: Greyhound Corporation v. Rothman, D.C., 84 F.Supp. 233, affirmed 4 Cir., 175 F.2d 893; and Greyhound Corporation v. Goberna, 5 Cir., 128 F.2d 806.

In both there was a service as distinguished from merchandise involved, and in neither was the element of competition present. It may be that the word "Greyhound" had probably come into greater prominence and therefore efficacy to identify in the public mind the type of transportation service that the plaintiff there purveyed, than can be said for "Clipper" in the carriage of cargo; and perhaps an argument would be plausible that the distinctive and fanciful qualities attributed by Judge Coleman in the first case to that plaintiff's trade-name and symbol, are not so well sustained here as the result of this plaintiff's selection of "Clipper" in 1931 because of a multiple use thereof for other trade purposes. These distinctions are relative and not necessarily destructive of plaintiff's cause; they do indeed expose a sensitive area in this case, for as Judge Coleman points out in distinguishing the trade-mark status of arbitrary and fanciful words on the one hand, and those not so to be classified, on the other; 84 F.Supp. at page 238 he writes: "The question is important because, in determining the extent of the field of exclusive occupation, a name in the first class is accorded liberal treatment in the law of trade-marks, while a name in the second class is narrowly restricted to the particular kind of goods for which it is used by its owner."

The Goberna case, supra, decides that the Greyhound mark was entitled to protection against all-expense tours to the Republic of Cuba, as to which activity there was nothing in common between the parties. The Court found, however, that such tours "related to the transportation business" [128 F.2d 807], and held for plaintiff, apparently because of the showing of a secondary significance of the word "Greyhound".

In that connection, one may query whether a secondary significance can ever be erected if a given plaintiff is to be denied, on narrow grounds, the protection of his mark during the formative years of his enterprise.

As the result of seeking to adapt the principles announced in the foregoing cases to the facts disclosed in this record, it is my opinion that the plaintiff is entitled to a measure of protection of its trade-mark

"Clipper" in connection with the motor haulage which is required to enable it to maintain its service of transportation of passengers and cargo by airplane. That service has been sufficiently alluded to for present purposes, and is quite clearly portrayed in several of the plaintiff's exhibits.

The provision in the agency agreement of the defendant that a given agent has the privilege: "3. To use the (defendant's) name, trade-mark, design of lettering and color combination * * *" is indicative of an assertion of ownership of the trade-mark "Clipper" which is consistent with all of its advertising display.

■ The trade-mark "Clipper" is the property of the plaintiff in the field of transportation by air of passengers and cargo, and has been since 1931. The registration of that trade-mark in 1949, pursuant to the Trade-mark Act of 1946, 15 U.S.C.A. § 1051 et seq., "for transportation of passengers and freight by aircraft" did not operate to withdraw the trademark from the land haulage of passengers and cargo which was incidental to and an essential adjunct of the said transportation.

■ When the defendant adopted its corporate name, and promulgated to its agents the exploitation of the word "Clipper" in connection with the haulage of "household goods", it was chargeable with knowledge of the plaintiff's trade-mark and its use, and therefore acquired no rights in derogation of those which were the property of the plaintiff.

■ To answer the question propounded in the Federal case, supra, it is thought that the damage which this plaintiff may suffer from the use of "Clipper" by the defendant is the probable intrusion by it into the haulage of cargo intended for plaintiff's planes, and now handled by it own agents; also, in that possible misadventures in the conduct of defendant's services might be falsely attributed by potential customers of the plaintiff to the manner in which it conducts its own haulage of passengers and freight. Both are reasonably likely, and within the contemplation of Section 32(1) of the Act, Title 15 U.S.C.A. § 1114(1), as I venture to read its provisions.

The burden imposed upon the plaintiff is greatly diluted by the fact that on September 20, 1946 (within the defendant's first year), it gave written notice of an asserted invasion by defendant of the trade-mark "Clipper", and requested discontinuance. That notice was ignored, and a later one of November 1, 1946, elicited a negative response. The defendant chose to stand on what it conceived to be its legal rights, but the results of that decision cannot now be availed of so as to enchance the plaintiff's reputed burden. Defendant has doubtless built up a business since 1946, but since it chose not to continue to use the style of its certificated predecessor but selected an entirely different name and attire, I should suppose it could now make another change which would avoid the unfair competition which is clearly present as has been shown; and to be additionally apparent in the matters about to be discussed.

■ The painting on the defendant's agents' vans of a good sized picture of an airplane, under defendant's name, is minimized in argument, but seems to me to be so clear an attempt to identify those trucks with the enterprise conducted by the plaintiff, as to render discussion superfluous. The assertion that it was intended to signify speed is plausible, but so would the picture of any fast moving object such as a locomotive, race-horse, or indeed a clipper ship. The selection of an aircraft in association with the word "Clipper" was too pointed to be fortuitous as the evidence is now appraised. The defendant's elaborate homage to the tradition expressed in the term "Clipper Ships" was carefully disparaged in its deliberate omission of any such picture on its trucks.

In vindicating defendant's selection of the word "Clipper", it doth protest too much. There is more involved than an exercise in semantics. Whether "Clipper" came to be associated with fast sailing ships because they clipped the duration of ocean voyages—which may be suspected—

or for other reasons, is not presently important. Nor is it necessary to split hairs over the precise attribute, in addition to speed, which the word has come to suggest in the many associations in which it is now encountered. Perhaps it connotes a touch of assurance along with celerity, but the decision cannot turn upon literary disputation. Nor is it profitable to discuss whether the plaintiff's selection of the word can be deemed to have been wholly arbitrary, or wholly descriptive.

The plaintiff's registration was not under that section of the statute, 15 U.S.C.A. § 1052(f), which accords the privilege to a mark "which has become distinctive of the applicant's goods in commerce" (it is assumed that "service" may be here substituted for "goods"), which is some evidence that "Clipper" had been selected in 1931 as a non-descriptive trade-mark, and so registration in the Principal Register was accomplished. It was of course a figurative appellation, and to that extent selective and arbitrary, which is perhaps sufficient for other than pedantic purposes.

The display of the word on the vans of the defendant's agents, as prescribed by it, constitutes an obvious distortion of the defendant's corporate name, as will be seen by the photograph attached to plaintiff's brief. A casual observer might well conclude that the words "Van Lines, Inc." constitute the defendant's complete name.

That conduct, in view of written notice of the plaintiff's prior claim to the trademark "Clipper", was consistent with a purpose to filch and exploit it with the intent to invade so much of the plaintiff's business territory as embraced the use of trucks and other vehicles to haul freight intended for shipment on its cargo planes.

If the second cause of action is indeed independent of the first, and not necessarily part of it, I am of the opinion that it is well documented and demonstrated.

It results that the plaintiff's motion is granted, and the defendant's cross motion is denied. This means that a decree is to be entered in favor of the plaintiff, and in accordance with paragraphs 1 to 5, inclusive, of the prayer of the complaint, except that no award of a specific sum as damages can be made on the papers now before the Court. That would have to be a matter of proof to be established before a commissioner, and as the result of an accounting.

Settle decree on notice.