**AVON SHOE CO., Inc., et al.**
**v.**
**DAVID CRYSTAL, Inc., et al.**

United States District Court
S. D. New York.

Dec. 23, 1953.

Coudert Brothers and Seligman & Seligman, New York City (Alexis Coudert, Edward F. Seligman, A. Michael Frothingham, New York City, of counsel), for plaintiffs.

Arnold M. Grant, New York City (Bernard A. Saslow, New York City, of counsel; Harold A. Axel, New York City, with him on the brief), for defendants.

MURPHY, District Judge.

This is an application for temporary injunction by plaintiffs alleging trademark infringement and unfair competition arising out of defendants' use of the registered mark "Haymaker" on non-competing goods. Plaintiffs, New Jersey and Massachusetts corporations, respectively, and related companies under the Lanham Act,[1] are exclusive owners of four trademarks: "The Haymaker," registered for gloves and first used in 1940; "Haymaker," registered for gloves in 1942 and first used in 1936; "Haymakers," registered for shoes in 1952 and first used in 1941; and "Haymakers by Avon," registered for shoes in 1953 and first used in 1951. Defendants, David Crystal, Inc. and Haymaker Sports, Inc., New York corporations, appear to be closely related manufacturers who advertise, distribute and sell various items of feminine apparel such as blouses, shirts, skirts, shorts and suits under the name "Haymaker." These defendants are owners of the registered trade-

1. 15 U.S.C.A. § 1055.

marks, "Hit Maker" (1945) and "Cynthia of Haymaker" (1952). The remaining defendants are retailers selling the defendant manufacturers' goods who have offered no independent defense to this motion.

Plaintiffs insist that they have used the "Haymaker" mark since 1940, that their wholesale annual business in shoes thus denominated exceeds one million dollars, that the mark has been nationally advertised at a cost of "hundreds of thousands of dollars," and that they were completely ignorant of defendants' use of "Haymaker" until February, 1952. They have, plaintiffs assert, licensed use of the mark on handbags and presently contemplate its extension to women's gloves. Defendants' bad faith, according to plaintiffs, is manifest by appropriation not only of the trademark but also the major features of plaintiffs' distinctive advertisements. In addition defendants are alleged to use plaintiffs' mark without other identification of the source, thus enhancing the probability of palming off, and also to make use of the mark with the legend subscribed "Trade Mark Reg.", although defendants are aware that they have not registered such mark. Confusion arises, it is claimed, from sale of merchandise of both parties in the same shops.

For their part, defendants claim use of the "Haymaker" mark on their merchandise since 1943, and its use as a corporate name since 1945. They deny copying the mark or its distinctive advertisement from plaintiffs and insist that "Haymaker" was independently conceived for them in 1943 by one of their advertising agents. Defendants allege their use was innocent of prior or concurrent use by plaintiffs until receipt of such information by letter on March 7, 1952. By affidavits of some of their retail outlets, defendants deny confusion and point out that in volume their sales of "Haymaker" merchandise exceeds that of plaintiffs.

It may indeed be difficult "for the seller of a steam shovel to find ground for complaint in the use of his trademark on a lipstick,"[2] but the situation presented by use of infringing marks on non-competing goods in the same field of feminine apparel must be appraised in more sympathetic light. The Continental theory of protection of a trademark against the draining of its glamour by use on non-competing goods[3] has been recognized in Anglo-American courts when the likelihood of confusion is such that possible practices of the second user "may stain the owner's reputation in the minds of his customers"[4] and there is the present possibility of future expansion by such owner into the market exploited by the second user. Such protection in our courts has long antedated the Lanham Act.[5] Under that statute which has made the test for

2. L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273.

3. See Schechter, "Rational Basis of Trademark Protection," 40 Harv.L.Rev. 813, 825, 831 (1927).

4. See S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 175 F.2d 176, 179, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L. Ed. 527.

5. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039 (pancake flour v. syrup); Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509 (magazine v. hats); Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962 (men's clothing v. hats and caps); Wall v. Rolls-Royce, 3 Cir., 4 F.2d 333 (automobiles v. radio tubes); Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972 (locks v. flashlights); Cluett, Peabody & Co., Inc. v. Wright, 46 F.2d 711, 18 C.C.P.A., Patents, 937 (belts v. collars, shirts); Kotabs, Inc. v. Kotex Co., 3 Cir., 50 F. 2d 810 (drug tablets v. sanitary pads); L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272 (fountain pens v. razor blades); In re Keller, Heumann & Thompson Co., Inc., 81 F.2d 399, 23 C.C.P.A., Patents, 837 (men's shoes v. men's suits and coats); California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 118 F.2d 149 (fruits v. carbonated beverages); Standard Brands, Inc. v. Smidler, 2 Cir., 151 F.2d 34 (vegetable juice v. vitamin tablets); Rice-Stix Dry Goods Co. v. Industrial Undergarment Corp., 152 F.2d 1011, 33 C.C.P.A., Patents, 813 (piece goods v. ready made rayon slips).

protection one of "likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services",[6] non-competing goods using an infringing mark have been enjoined.[7] Indeed should the substantive law of New York be invoked on the basis of diversity of citizenship to govern the disposition of this cause,[8] such protection could be similarly assured against the non-competing goods.[9]

Certainly one factor involved in estimating the likelihood of confusion in the instant case is the distinctiveness of the trademark "Haymaker." Defendants allege that this mark has been registered for farm seeds as early as 1929 and for hay storage bins in 1937, and that as a "dictionary word" it is descriptive. The distinction between strong, relatively attractive marks on one hand and diluted ones on the other hand, such as "blue ribbon," "gold medal" and "federal," however nondescriptive their use may be, is a significant one in delimiting the scope of protection in non-competitive lines of goods.[10] Applied to "Haymaker," this distinction would hardly leave it in the category of a weak mark by dint of its prior and somewhat descriptive use for seeds and bins. And while the mark is capable of generic

use, its affixation to feminine apparel in the instant case is arbitrary and fanciful.

Again the circumstance of identical marketing channels and common purchasers for women's shoes on one hand, and their blouses and skirts, on the other, is a factor conducive to likelihood of confusion in this case, and significantly favorable to judicial protection.[11]

These are factors which should weigh heavily in an ordinary proceeding for injunctive relief. But in an extraordinary one, such as the instant application for a preliminary injunction before trial of issues of fact, such factors may often be insufficient. A number of conflicting inferences remain unresolved after perusal of the "evidence"—limited as it is to affidavits in this case. Some of these might well be put aside as remotely material, such as the flat opposition of the affidavits on the matter of actual confusion. But there remains the allegations vis à vis on respective commencement of use and volume of use, as well as defendants' overwhelming good faith or the total lack of it, depending on the affidavit in hand. These matters would have significant bearing on the proferred defense of laches.[12] Significant, too, in view of plaintiffs' claim of utmost ur-

6. 15 U.S.C.A. § 1114(1).

7. Hanson v. Triangle Publications, 8 Cir., 163 F.2d 74, (magazines v. dresses); Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969 (magazine v. ladies' garments); Cook Chemical Co. v. Cook Paint & Varnish Co., 8 Cir., 185 F.2d 365 (paint v. insect spray and weed killer); Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141 (furniture v. electrical appliances); Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517 (ranges and refrigerators v. sewing machines and vacuum clearners); Pan American World Airways v. Clipper Van Lines, Inc., D.C.E.D.N.Y., 98 F.Supp. 524 (air carrier v. truck carrier).

8. Cf. Franke v. Wiltschek, 2 Cir., 1953, 209 F.2d 493.

9. Tiffany & Co. v. Tiffany Productions, Inc., 147 Misc. 679, 264 N.Y.S. 459, affirmed 262 N.Y. 482, 188 N.E. 30 (jewelry v. motion pictures); Long's Hat Stores Corp. v. Long's Clothes, Inc., 224 App.Div. 497, 231 N.Y.S. 107 (haberdashery v. men's clothing); Forsythe Co. v. Forsythe Shoe Corp., 234 App. Div. 355, 254 N.Y.S. 584, modified 259 N.Y. 248, 181 N.E. 467 (haberdashery v. ladies' shoes).

10. See Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141, 144. And cf. Federal Tel. & Radio Corp. v. Federal Television Corp., 2 Cir., 180 F. 2d 250.

11. Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039. And see In re Keller, Heumann & Thompson Co., Inc., 81 F.2d 399, 401, 23 C.C.P.A., Patents, 837; Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517, 521.

12. Cf. Emerson Electric Manufacturing Co. v. Emerson Radio & Phonograph Corp., 2 Cir., 105 F.2d 908, 911, certiorari denied 308 U.S. 616, 60 S.Ct. 262, 84 L.Ed. 515.

gency, is the apparently conceded fact that although notice was first sent to defendants on March 7, 1952, concerning use of the contested mark, this action was not commenced until October 28, 1953.

These questions may be resolved favorably for judicial protection after trial. They are by no means sufficiently free from doubt to justify disposition upon comparison of affidavits.

There is finally no showing by plaintiffs that any damages which may be suffered before the case can be tried on its merits will be irreparable. No diversion of custom, no loss of trade and no surrender of a current specific opportunity for expansion of use by plaintiffs into the market exploited by defendants is alleged and supported on this application. This, in addition, is reasonable ground for denial of the relief sought.[13]

Motion for preliminary injunction is denied.

Settle order on notice.

---

13.   See Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 1953, 208 F.2d 464.