**WHAT–A–BURGER OF VIRGINIA, INC., Jack Branch, What–A–Burger of Newport News, Inc., Paul Branch, Plaintiffs,**

v.

**WHATABURGER INC., OF CORPUS CHRISTI, TEXAS, Defendant and Counterclaim Plaintiff,**

v.

**What–A–Burger of Virginia, Inc., Jack Branch, What–A–Burger of Newport News, Inc., Paul Branch, Counterclaim Defendants.**

No. CIV.A. 4:02CV58.

United States District Court,
E.D. Virginia,
Newport News Division.

April 3, 2003.

Melvin J. Radin, Esquire, Norfolk, VA, for Plaintiffs.

Shepherd D. Wainger, Esquire, Kaufman & Canoles, PC, Norfolk, VA, Hubert A. Crouch, III, Esquire, Crouch & Inabnett, Dallas, TX, for Defendant.

### *MEMORANDUM OPINION AND FINAL ORDER*

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant's and counterclaim plaintiff's [hereinafter defendant's] motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendant's motion is **DENIED**, and summary judgment is **GRANTED** in favor of plaintiffs and counterclaim defendants [hereinafter plaintiffs].

On May 17, 2002, plaintiffs What–A–Burger of Virginia, Inc., Jack Branch, What–A–Burger of Newport News, Inc., and Paul Branch (collectively "What–A–Burger") filed the instant action seeking declaratory relief pursuant to 28 U.S.C. § 2201 on a trademark dispute under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Defendant Whataburger Inc., of Corpus Christi, Texas ("Whataburger") answered on September 23, 2002, and filed a counterclaim on February 11, 2003, seeking

that the court declare that Whataburger is the rightful owner of the trademark in question and that it is entitled to exclusive use of said trademark within the state of Virginia. On March 4, 2003, Whataburger filed a motion for summary judgment. The appropriate response and reply have been received, and the court has determined that oral arguments in this matter are not required; therefore, the matter is ripe for review.

### Factual History

Jack Branch ("Branch") alleges that some time prior to August 1, 1957, he and his brother Paul Branch, Jr., opened a What–A–Burger restaurant in Newport News, Virginia. Whataburger disputes this date, arguing that there is no documentary evidence to support the 1957 date, and that the only evidence of that date is the testimony of Branch. In 1958, Branch opened a second restaurant in Richmond, Virginia. Beginning in 1960, and continuing through 1989, Branch opened additional What–A–Burger restaurants in Richmond, Petersburg, Colonial Heights, and Chester, Virginia. In 1997, What–A–Burger of Virginia, Inc., was incorporated. What–A–Burger of Newport News, Inc., was incorporated on June 30, 1999. Branch's brother Paul passed away on February 8, 1999. Paul Branch, Jr.'s, son, Paul III, inherited his father's interest in the business and is currently president of What–A–Burger of Newport News, Inc.

Whataburger is a Texas corporation that operates and franchises Whataburger restaurants under an exclusive trademark license with WhataPartnership. Its franchises are located in Arkansas, Arizona, Florida, Louisiana, Mississippi, New Mexico, Oklahoma, Texas, and Mexico. Harmon A. Dobson, founder of the Texas Whataburger, registered the WHATA-BURGER ® symbol with the United States Patent and Trademark Office on September 24, 1957; the last listed owner for the mark is Whataburger, Inc., of Corpus Christi, Texas. (*See* inquiry from TESS database on U.S. Reg. No. 652,137, U.S.P.T.O., attached as Ex. A to Mem. Supp. Mot. Summ. Judg.) The rights have since been assigned to WhataPartnership and licensed back to Whataburger.

In his affidavit and during his deposition, Branch conveys that he first became aware of the Texas Whataburger in 1970. At that time a representative of Whataburger was traveling through the area and stopped to talk to Branch after seeing the What–A–Burger sign. This gentleman told Branch of the Texas Whataburger restaurants. He subsequently telephoned Branch. At some point, Branch indicates, there was a discussion of a possible franchise. Letters provided to plaintiffs during discovery corroborate the encounter. In a letter to Paul Branch, Jr., dated June 24, 1970, George R. Garrison ("Garrison"), president of Whataburger Drive Inns, refers to a visit and discussion regarding the problem with the names of the establishments. (Garrison Letter, attached as Ex. 6 to Mem. Opp. Mot. Summ. Judg.) The letter suggests that Jack Branch change the names on his establishments, and that a license for those run by Paul Branch might be available. (*Id.*) Garrison suggests that no action be taken until another Whataburger representative, Sam Main, meets with the Branch brothers. (*Id.*) Finally, the letter closes with a suggestion that Paul Branch put up a flagpole and fly the American flag to draw attention to his establishment, as zoning regulations prohibit his erecting a sign of any height. (*Id.*) A second letter dated July 7, 1970, from Sam W. Main, general manager of Whataburger Drive Inns, to Paul Branch suggests dates for a meeting to discuss Garrison's letter. (Main Letter, attached as Ex. 7 to Mem. Opp. Mot. Summ. Judg.)

There is no additional correspondence offered on this matter, and the evidence provides no indication that Whataburger pursued the matter further until a letter to Paul Branch dated January 25, 2002. This letter, from J. Timothy Hobbs and Christopher Kelly, legal counsel for Whataburger and WhataPartnership, addresses the matter of the WHATABURGER ® trademark and What–A–Burger's use of the name. The letter indicates that Whataburger believes that the Branches may be using the name "pursuant to an agreement made by and between [Paul Branch] (or [his] predecessor in interest) and [Whataburger's] founder, Harmon Dobson, or perhaps another entity." (Hobbs letter, attached as Ex. 10 to Mem. Opp. Mot. Summ. Judg.) The letter then acknowledges that such use within What–A–Burger's marketing area may not be an actionable infringement of Whataburger's rights. (*Id.*) Finally, the letter requests documents or information relating to any agreement. (*Id.*)

### Standard of Review

Summary judgment is appropriate when a court, viewing the record as a whole, finds that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). A party may not rest on the pleadings alone, but must instead show that "specific, material facts exist that give rise to a genuine triable issue." *Hagan v. McNallen (In re McNallen),* 62 F.3d 619, 623–24 (4th Cir. 1995). In essence, evidence must be presented on which a jury could reasonably find for the losing party.[1] *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The district court has the power to enter summary judgment *sua sponte,* "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).[2]

The instant matter is a request for declaratory relief. This court has the power to hear a declaratory judgment action under 28 U.S.C. § 2201. However, the action must still present a justiciable case or controversy within the meaning of Article III of the Constitution. 28 U.S.C. § 2201(a); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In a declaratory judgment action for trademarks, the plaintiff must show that (1) it has a real and reasonable apprehension of litigation, and (2) it has engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant. *Virgin Enters., Ltd. v. Virgin Cuts, Inc.,* 149 F.Supp.2d 220, 227–28 (E.D.Va.2000) (citing *Windsurfing Int'l, Inc. v. AMF, Inc.,* 828 F.2d 755, 757 (Fed.Cir.1987) and *Indi-*

---

1. The court notes that in the instant matter, the parties have agreed to a bench trial; therefore, the court would be the ultimate finder of fact in the matter at hand, had there been any genuine issues of material fact.

2. The court recognizes that, in granting summary judgment *sua sponte,* it must assure that the losing party has had the opportunity, as provided by Rule 56, to demonstrate that there are issues of material fact. *See United States Dev. Corp. v. Peoples Fed. Sav. & Loan*

*Ass'n,* 873 F.2d 731, 735 (4th Cir.1989). In the instant matter, however, the court is deciding in favor of the nonmoving party on a properly noticed motion for summary judgment; plaintiffs simply failed to make a cross-motion. Moreover, the losing party has addressed the issues upon which the court bases its decision, and it has stated that there are no genuine issues of material fact which would prevent resolution on summary judgment.

*um Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 883 (Fed.Cir.1985)). In the case at hand, these criteria are clearly met. What–A–Burger has received a letter from legal counsel for Whataburger inquiring about the use of the mark in question and requesting documentation on the matter. What–A–Burger also indicates, in its complaint, that Whataburger has threatened suit to protect its trademark. Therefore, What–A–Burger has a reasonable apprehension of litigation. Furthermore, its use of the What–A–Burger name on its establishments in Virginia has brought it into adversarial contact with defendant Whataburger, as the letters and communications mentioned above indicate. As the jurisdictional requirements have been met, this court has the power to hear the case before it.

### Analysis

What–A–Burger argues that Jack and Paul Branch began using the name for their restaurant before the registration of the trademark by Harmon Dobson in September, 1957, having no knowledge of the Texas Whataburger until 1970, and that What–A–Burger has used the mark continuously since the initial establishment of the first restaurant in Newport News. What–A–Burger further contends that Whataburger has been aware of the Branches' use of the name since 1970 and has failed to pursue an action until the counterclaim currently before the court; Whataburger is therefore barred from any relief under the equitable doctrines of laches, acquiescence, and estoppel as set forth in 15 U.S.C. § 1115(b)(8).

Whataburger argues that it has the exclusive right to use the trademark in question. It asserts that the Virginia What–A–Burger cannot prove that its use of the name predates Whataburger's trademark registration, as the only evidence of such use is the testimony of Jack Branch. It further argues that even if such prior use could be proven, What–A–Burger's use of the mark would be confined to the original What–A–Burger establishment, prohibiting use of the mark at all restaurants established since the registration of the trademark, pursuant to 15 U.S.C. § 1115(b)(5). Finally, in its reply, Whataburger asserts that the equitable defenses of laches, acquiescence, and estoppel cannot be invoked, arguing that the sole issue before the court is the declaration of the ownership of the mark; Whataburger contends that the issue of infringement is not before the court and that the Virginia What–A–Burger cannot, therefore, invoke the equitable defenses to infringement.

The court first addresses the nature of the relief sought by the parties in the claim and counterclaim at issue. Whataburger's argument in its reply that the issue of infringement is not before the court is disingenuous at best. The issue of infringement is central to the matter at hand. The court cannot simply declare Whataburger's rights to the trademark at issue as against the public at large; it has been asked to declare Whataburger's rights to the use of the trademark as against What–A–Burger. Infringement is the issue. Moreover, Whataburger so acknowledges in its summary judgment motion: "Through their Complaint ... plaintiffs and counterclaim defendants seek entry of an order by the Court declaring the following ... (5) plaintiffs and counterclaim defendants are not guilty of federal trademark infringement ...." Whataburger cannot acknowledge the existence of the infringement issue in one filing, and then vehemently protest its existence in the next. Both parties have been aware since this matter began that the issue between them is whether What–A–Burger has infringed on the rights of Whata-

burger through the use of the mark in question.

■ Whataburger contends, and the court will assume without deciding, that its mark is incontestable under 15 U.S.C. § 1065, as it has been registered and in continuous use for more than the required five years since registration.[3] The Lanham Act provides several defenses that can be invoked once a mark has become incontestable. 15 U.S.C. § 1115(b). What–A–Burger asserts two of these defenses in arguing for its right to use the mark in Virginia. The first defense is set out in 15 U.S.C. § 1115(b)(5), which provides that if the party charged with infringement adopted the mark without knowledge of the registrant's prior use and has used the mark continuously from a date prior to the registration of the mark, the infringing party may continue its use in "the area in which such continuous prior use is proven." The second defense is that described in § 1115(b)(8): "That equitable principals, including laches, estoppel, and acquiescence, are applicable."

In arguing the prior use defense, What–A–Burger contends that the Branches established the Newport News restaurant in the summer of 1957, prior to the September 1957 registration of the mark by Harmon Dobson, and that its use has continued in Virginia since that time. Therefore, What–A–Burger contends, it maintains the right to continue its use of the mark in Virginia. Whataburger argues that the only evidence of the date on which the Newport News What–A–Burger opened is the self-serving testimony of Jack Branch, which is insufficient to establish the date. In his deposition, Branch indicates that, to the best of his recollection, he opened the What–A–Burger in Newport News sometime between March, 1957 and June, 1957. Furthermore, Whataburger argues that even if the Branches established the Newport News What–A–Burger prior to September, 1957, their use of the mark is limited to that single location under § 1115(b)(5).

The court finds that the evidence is not sufficient to establish that What–A–Burger opened the Newport News restaurant prior to September, 1957. An examination of the deposition testimony of Jack Branch sheds some light on the reasons for the difficulty in proving this date. The opening of the What–A–Burger was forty-six years ago. Memories have faded, photographs have been lost, records have been discarded, and people have died. It is simply unrealistic to expect Branch to provide those items about which defendant's counsel inquires at the deposition—a forty-six year old lease, a picture of the grand opening, or a receipt from the purchase of a french fry machine. The only evidence What–A–Burger is able to offer as to the date of the What–A–Burger opening in Newport News is the testimony from Branch relating the window of time between March and June of 1957.

Because the court finds that What–A–Burger cannot prove the date of its use of the trademark in question, it is unnecessary to address whether § 1115(b)(5) would limit use of the mark to the Newport News What–A–Burger, as Whataburger argues, rather than to the state of Virginia. However, the court notes that in *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, the Fourth Circuit stated that

---

**3.** Under 15 U.S.C. § 1065, the mark must be registered and in use for five years, and must meet the criteria set out in § 1065(1)-(4). Whataburger has not specifically addressed and proven these criteria; however, it has demonstrated the registration of its mark and described its continuous use. As the assumption of incontestability does not affect the outcome, the court so assumes.

"[i]n delineating geographical areas for trademark use, whole States are the usual unit." 604 F.2d 849, 850 n. 3 (4th Cir. 1979).

■ The second defense invoked by What–A–Burger is that set forth in § 1115(b)(8): the equitable doctrines of laches, acquiescence, and estoppel. Whataburger attempts, in its reply, to argue around the use of the equitable defenses by What–A–Burger. First, Whataburger attempts to argue that the issue of infringement is not before the court. As the court has already addressed this argument, no further explanation for its failure is necessary. Whataburger then attempts to argue that What–A–Burger fails to advance the defense of acquiescence by stating that the argument propounded by plaintiffs addresses only the laches defense. That is simply untrue. Plaintiffs clearly address the issue of acquiescence through the evidence regarding conversations between Branch and the Texas Whataburger representative, and the letters between the parties subsequent to the encounter. Furthermore, the equitable doctrines need not be invoked by name; whether or not plaintiffs chant the mantra of estoppel, this court will provide the equitable relief appropriate in the case at hand.

The court finds that the WHATABURGER ® mark has been properly registered, and that Whataburger is licensed to use it. The question remaining, then, is whether that right can be enforced against What–A–Burger. The court finds that it cannot. Whataburger is barred under the equitable doctrines as set forth in § 1115(b)(8) from enforcing its right to the mark against What–A–Burger in the state of Virginia. The undisputed evidence demonstrates that Whataburger had knowledge of the use of its mark by What–A–Burger since 1970. Despite this knowledge, it failed to pursue any action to enforce this mark until 2002, and even then, it was the alleged infringer, What–A–Burger, who initiated the suit. The Fourth Circuit has recognized that unreasonable delay can bar relief for the registrant of a trademark. *See Brittingham v. Jenkins,* 914 F.2d 447, 456 (4th Cir.1990); *Rothman v. Greyhound Corp.,* 175 F.2d 893, 895–96 and n. 1 (4th Cir.1949) (noting that delay may preclude a claim for damages); *Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, Inc.,* 165 F.2d 693, 694–95 (4th Cir.1947) (finding that laches or acquiescence, combined with elements of estoppel, can bar injunctive relief).

It is not simply the fact of delay itself, but rather the consideration of the individual facts and circumstances of the case that determine the operation of laches. *Brittingham,* 914 F.2d at 456. The Fourth Circuit has set out factors for consideration: "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay." *Id.* In the instant case, it is clear that the owner of the mark had knowledge of its use by What–A–Burger as early as 1970, and the first criteria is therefore met. As to the second criteria, Whataburger argues that the delay was not unreasonable, as it had no reason to bring an action because the infringing use had not threatened its market. That argument might prevail if Whataburger had not learned of the infringement thirty-two years ago. It is here that the third factor set out by the Fourth Circuit comes into play. What–A–Burger has clearly been prejudiced by the delay; because its initial use of the mark began forty-six years ago, it is now unable to prove conclusively the date of that use. Whataburger, however,

appears to argue that it need not press its case even now, as it has not attempted to expand into the Virginia area. That interpretation of the applicable law cannot be correct, as it flies in the face of the doctrines of equity. Such an interpretation would allow trademark owners with knowledge of potentially infringing use to use delay as a tactic, which could result in the very failure of proof suffered by What–A–Burger as to the date it began operations.

Whataburger knew of the use of its mark in 1970. Its representative visited a What–A–Burger establishment, attempted to interest the owner in a franchise, offered advice for the improvement of his business, and failed to follow up on any requests that What–A–Burger change its name. Such conduct by Whataburger is sufficient to establish acquiescence to the use of the mark.[4] *See Ambrosia*, 165 F.2d at 694 (finding that a visit by trademark owner's representative and subsequent correspondence attempting to encourage business relationship, followed by an eight year delay in filing an action, constituted laches and acquiescence amounting to estoppel). The Branches continued to build up their businesses, investing time and money in creating the forty-six years of goodwill that now imbues the What–A–Burger restaurants in Virginia. If ever there were an occasion for the use of equitable remedies, it is now. Whataburger had every opportunity to protect its mark in 1970, and in the thirty-two years that have elapsed since that time. Instead, it allowed the Branches to continue expanding their business. Even Whataburger doubted that it could press its case, as the

letter to Paul Branch from counsel representing Whataburger conveys. (*See* Hobbs letter, attached as Ex. 10 to Mem. Opp. Mot. Summ. Judg.)

As explained by the Fourth Circuit in *Rothman:*

[T]he courts have had to decide in each case upon its peculiar circumstances whether the greater equity lay in the enforcement of the right of the trade-mark owner to exclusive use of the name or in the recognition of the substantial business that the infringer may have built up in reliance upon the owner's inaction.

175 F.2d at 897. In the matter at hand, the court finds that the greater equity lies in recognizing the value of the What–A–Burger establishments as built by the Branch brothers in reliance on the thirty-two years of inaction by Whataburger. It is for that reason that the court finds the defenses of laches and acquiescence, amounting to estoppel, to be appropriate in the instant matter.

For the reasons stated above, the court **DENIES** defendant's motion for summary judgment and **GRANTS** summary judgment in favor of plaintiffs. The court **DECLARES** that defendant is the rightful owner of the trademark WHATABURGER ® but that the equitable defenses as set forth in 15 U.S.C. § 1115(b)(8) bar defendant from asserting this right and obtaining any relief, whether damages from plaintiffs for use of the mark or an injunction against plaintiffs barring use of the mark, in the state of Virginia.

4. Defendant cites *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 462–63 (4th Cir. 1996) in arguing that the defense of acquiescence fails as a matter of law, because plaintiffs fail to allege active or explicit consent. However, as the court has explained above, the correspondence between the Branches and representatives of the Texas Whataburger suffices to demonstrate acquiescence. Moreover, the Fourth Circuit, in *Sara Lee*, cites to *Brittingham* to demonstrate the operation of laches, and to *Ambrosia* to exemplify estoppel by acquiescence. *Id.* at 462–64.

*Attorney Fees*

■ Both parties have requested attorney fees. Under 15 U.S.C. § 1117(a), the court has the discretion, "in exceptional cases," to award attorney fees to the prevailing party in a trademark dispute. The Fourth Circuit has explained that a case is "exceptional" if the defendant's conduct was "malicious, fraudulent, willful or deliberate in nature." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir.2001) (citing *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir.1992)). To recover attorney fees, then, the prevailing plaintiff must "show that the defendant acted in bad faith." *Id.* The court finds that the case at hand fails to rise to the level of an "exceptional" case for the purposes of awarding attorney fees, although it is a close case. Whataburger knowingly sat on its rights for over three decades and then had counsel send a letter to What–A–Burger creating reasonable apprehension concerning infringement litigation. Further, a reading of the excerpts from the deposition of the elderly Jack Branch submitted to the court reveals, at points, rather unnecessary hostile and almost insulting and abusive questioning. However, plaintiffs did file this declaratory judgment action, even if they did so to protect themselves, and plaintiffs have not clearly demonstrated that defendant acted in bad faith. Additionally, the use of the names What–A–Burger and Whataburger is confusing, and the questions over the use of the mark are legally proper before the court, albeit too late.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Final Order to counsel for all parties.

**IT IS SO ORDERED.**