968 F.2d 1211
 24 U.S.P.Q.2d 1201
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David A. BRITTINGHAM; Thrasher's, Incorporated; Thrasher's
of Georgetown, Incorporated, Plaintiffs-Appellants,
POTATO WORLD, INCORPORATED; Greater Potater, Incorporated;
Greater Potater Union Station, Incorporated;
Greater Potater Harborplace,
Incorporated, Parties in
Interest-Appellants,
v.
Charles R. JENKINS; Synepuxent Pier and Improvement
Company; Time Inc.; Ocean Fries Corporation,
Defendants-Appellees.
 No. 91-1245.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 9, 1992
Decided: July 23, 1992
 
 Argued: Larry Steven Gibson, Shapiro & Olander, Baltimore, Maryland, for Appellants. Raymond S. Smethurst, Jr., Adkins, Potts & Smethurst, Salisbury, Maryland, for Appellees.
 On Brief: Barbara R. Trader, Adkins, Potts & Smethurst, Salisbury, Maryland; Robert R. Priddy, Pollock, Vande Sande & Priddy, Washington, D.C., for Appellees.
 Before PHILLIPS, MURNAGHAN, and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 We now consider the second appeal in a trademark infringement action filed under the Lanham Trademark Act, 15 U.S.C. § 1051 et seq. The suit was filed in 1982 by David A. Brittingham, Thrasher's, Inc. and Thrasher's of Georgetown, Inc. in the United States District Court for the District of Maryland against Charles R. Jenkins and Resort Leisure Industries, Inc.[1] It alleged that the defendants were infringing on Brittingham's federally registered trademark THRASHER'S. Jenkins counterclaimed, seeking cancellation of Brittingham's federal registration, injunctive relief and damages. A trial was held in September 1983; in December 1987, the district judge issued a written opinion in which Jenkins succeeded on his counterclaim while Brittingham failed on his claim. The district judge ruled that Brittingham had obtained the federal registration of the THRASHER'S trademark fraudulently, that Jenkins owned the common law trademark, that Brittingham had infringed that common law interest, and that Brittingham had violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
 
 
 2
 Upon reference, a magistrate issued a report in June 1989 which recommended that Brittingham be ordered to pay to Jenkins (1) 100% of the profits that THRASHER'S had earned ($794,110.89), (2) tripled actual damages ($24), (3) prejudgment interest ($228,718.18), and (4) Jenkins' attorneys' fees. On August 14, 1989, the district judge adopted that report and recommendation, and later set the attorneys' fees award at $203,068.23.
 
 
 3
 On an appeal brought by Brittingham, we affirmed in part, reversed in part, and remanded. Brittingham v. Jenkins, 914 F.2d 447 (4th Cir. 1990). We affirmed the decision to invalidate Brittingham's trademark registration, but on wholly different grounds from those relied on by the district court. Whereas it had found that Brittingham had acquired an incontestable trademark under 15 U.S.C. § 1065, but that it was invalid because Brittingham had committed fraud in its acquisition, we held that the registered mark never became incontestable, because Brittingham had not used it "continuously" for five years. Id. at 454-55. We, therefore, did not find it necessary to address and did not address the issue of fraud.
 
 
 4
 We reversed much of the damages award, holding that Brittingham's defense of laches was applicable even if there was fraud. Id. at 457. Consequently, we reversed the award of prejudgment interest, and remanded for recomputation of the damages. Id. We also ordered the district court to reconsider the award of attorneys' fees in light of Jenkins' "diminished success." Id. at 458.
 
 
 5
 The case was again referred to a magistrate, who recommended that there be no reduction in the prior award of $203,068 for attorneys' fees, that damages be recomputed in the amount of $148,031.07, and that Jenkins be awarded further attorneys' fees for services rendered during the appeal and the proceedings on remand. The damages suggested were thus $874,794 less than the original award.2 The district judge, by order of October 7, 1991, adopted the recommendations, and Brittingham has now appealed the holdings as to attorneys' fees awards.
 
 
 6
 There are two questions posed for resolution by us. We must address the contention that the award of attorneys' fees for services rendered after the district court's order of August 14, 1989 should be altogether disallowed, as the appeal therefrom was not, as a matter of law, "exceptional." We must also determine whether some portion or all of the award of $203,068 for attorneys' fees and costs incurred prior to the first appeal should be disallowed on the ground that it was error to find that the case remained "exceptional" in light of our opinion in Brittingham v. Jenkins.
 
 I.
 
 7
 Congress, in authorizing district courts to award attorneys' fees upon establishment of a trademark violation, provided simply that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party," 15 U.S.C. § 1117(a), without defining "exceptional." The Senate Report stated that "[i]t would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate, and willful." S. Rep. No. 1400, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 7132, 7136 (1975).
 
 
 8
 Brittingham has contended that the district court erred in allowing Jenkins to recover additional attorneys' fees for the costs of the appeal and remand, on the ground that there was nothing "exceptional" about the appeal and subsequent remand that would justify the imposition of additional fees. Relying on U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034 (9th Cir. 1986), Brittingham has claimed that the determination of the "exceptional" nature of the case to support the award of attorneys' fees at the district court level does not justify an award of postjudgment attorneys' fees.
 
 
 9
 Jenkins has proposed an approach whereby we review the decision to award additional fees for the appeal and proceedings on remand merely for an abuse of discretion. That position is based on the point that, even if taking the appeal was reasonable, the award of attorneys' fees for an "exceptional" case should include the fees for appeal because the infringing party brought the appeal. Jenkins has claimed that U-Haul is wrongly decided.
 
 
 10
 In U-Haul, the Ninth Circuit was reviewing a district court decision to award $40 million in damages and attorneys' fees and permanently to enjoin against future false advertising, in a suit for false comparative advertising brought under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the common law. Unlike the instant case, the plaintiff had requested the appellate court to award attorneys' fees on appeal. The court stated:
 
 
 11
 Without deciding who prevailed on this appeal, we hold that Jartran need not pay U-Haul's attorneys' fees on appeal. There is nothing "exceptional" about Jartran's appealing this $40 million judgment. As this opinion indicates, difficult issues were raised by this appeal. It was entirely reasonable for Jartran to challenge the district court's decision. Jartran's brief was professionally written and raised important legal questions. Cf. Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 526-27 (D.C. Cir. 1985) (relying on malicious litigation tactics to justify a fee award under section 35). To permit the malicious conduct that caused this controversy to justify imposing a penalty on the bringing of this appeal would amount to causing additional punitive damages to wear the disguise of attorneys' fees.
 
 
 12
 739 F.2d at 1044.
 
 
 13
 Since we, in Brittingham v. Jenkins, 914 F.2d 447 (4th Cir. 1990), vacated the district court's finding of fraud as unnecessary and held laches to be applicable, the appeal raised significant issues on which Brittingham was successful. Furthermore, based upon our opinion, the amount of damages owed by Brittingham subsequently was reduced by the district court by $874,794. He should not be penalized for bringing the partially successful appeal nor for the need to have further proceedings on remand, especially since those proceedings were necessary to correct what we held were erroneous determinations on the first round. Consequently, we follow the reasoning of U-Haul that the case was not "exceptional." We consequently disallow attorneys' fees for the appeal and proceedings on remand, i.e., the period following the district judge's order of August 14, 1989.
 
 II.
 
 14
 With respect to the decision on remand not to reduce the initial award of attorneys' fees for proceedings before the district court prior to its August 14, 1989 decision, the situation is different. In our opinion, we had not ruled out the propriety of an award of some attorneys' fees and costs but, in view of a remand to fix a lesser award of damages, required that the award of attorneys' fees and costs should at the same time be reviewed. The relevant facts primarily are contained in the opinion which we issued in September 1990. Brittingham v. Jenkins, 914 F.2d 447 (4th Cir. 1990). The parties sharply dispute the interpretation of that opinion, particularly regarding whether we made any findings or drew conclusions as to whether Brittingham acted fraudulently or in bad faith.
 
 
 15
 Brittingham has claimed that we "concluded that Brittingham had acted in good faith at the time he registered the THRASHER's trademark with the PTO [United States Patent and Trademark Office]." (Emphasis supplied). On that basis, Brittingham has stated that the magistrate failed to "proceed consistent with the Fourth Circuit's view of Brittingham's good faith belief...." That claim, however, misses the mark. We did not make any findings one way or the other as to good faith at the time Brittingham registered the trademark.
 
 
 16
 We had described the falling out between the two former partners, Brittingham and Jenkins, in the summer of 1975 and stated: "At this point in time, it is apparent that Brittingham and Jenkins each believed that they owned THRASHER'S to the exclusion of the other."[3] 914 F.2d at 451. Nevertheless, in the legal discussion portion of the opinion, we declined to address Brittingham's contention that the evidence was insufficient to support a finding of fraud. Id. at 454. If the right to use a registered mark has become incontestable, then the claim that the registration or incontestable right to use the mark had been obtained fraudulently is a statutory defense against a charge of infringement. 15 U.S.C. § 1115(b)(1). The district court had found that Brittingham's right to use the mark had become incontestable, but that Jenkins had a defense to the charge of infringement because Brittingham had obtained the mark by fraudulent means. We did not review the sufficiency of the evidence to support the district court's finding as to the defense of fraud, because we found it unnecessary to do so in view of our determination that Brittingham's registration had not acquired incontestable status-the mark had not been used in connection with the sale of goods and services continuously for five consecutive years. Id.
 
 
 17
 Brittingham's intent was discussed in more depth when we considered the issue of laches. We overruled the district court's holding that the defense of laches was unavailable to Brittingham because he had intended the unfair competition. Id. at 457. We held that the award of damages should have been limited by the defense of laches because Jenkins failed to challenge Brittingham's infringement of the trademark in a timely fashion. Id.
 
 
 18
 Our statements in that context, while dicta, could perhaps be interpreted as expressing doubt as to the sufficiency of the evidence to establish fraud. Nonetheless, our holding did not require us to conclude whether Brittingham intended the unfair competition:
 
 
 19
 Based on the facts of this case, however, it is conceivable that Brittingham had a bona fide belief that he was the common law owner of the THRASHER'S mark. This belief could have been sustained in good faith until Mrs. Hastings had testified at trial, a point in time well after Brittingham initially applied for registration. Thus, there was some basis for Brittingham's belief that he owned the common law trademark at issue in the case. In addition, Jenkins' legal inaction probably contributed to that misunderstand ing. In our view, therefore, there is scant evidence to suggest that Brittingham intended any unfair competition.
 
 
 20
 In Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 419 ... (1916), the Supreme Court stated:"As to laches and acquiescence it has been repeatedly held, in cases where defendants acted fraudulently or with knowledge of plaintiff's rights, that relief by injunction would be accorded although an accounting of profits should be denied." Thus, under Metcalf, even if Brittingham did intend the unfair competition as the trial court found, the award of damages in this case could and should have been limited by the defense of laches.
 
 
 21
 Because laches is an equitable defense, and because Brittingham did infringe on Jenkins' common law mark, we hold that Jenkins is entitled only to those damages arising after the entry of the district court's original judgment on December 16, 1987. We therefore remand this case to the lower court for a recalculation of damages.
 
 
 22
 Id. at 456-57 (emphasis supplied). Thus, while we stated that there was but "scant evidence" suggesting intentionally unfair competition, we left that question unanswered, holding that even if Brittingham intended the unfair competition (and, of course, fraud), the defense of laches should serve to limit the damage award. Therefore, it is simply incorrect to claim that we made a finding as to good faith at the time Brittingham registered the trademark.
 
 
 23
 On remand, the district court again assigned the case to a magistrate who, in undertaking his reexamination, rejected Brittingham's argument that the court was obligated to reconsider the basis for its damages award. He took the position that only the amount of damages needed to be recalculated because we held that damages should include only the profits earned after December 16, 1987. The magistrate noted our statement that the evidence to suggest intentional unfair competition was "scant," but concluded that the word "scant" suggested the existence of evidence showing intent, and did not mean "no evidence." He concluded that there was"a basis for the finding of this Court that Brittingham[ ] did intend to unfairly compete with [Jenkins]," and recomputed the damages, lowering them substantially, but without reconsidering the evidence as to Brittingham's infringement. That approach was not in error, and we therefore find no merit to Brittingham's claim that the magistrate neglected to adhere to our view of the case.
 
 
 24
 As to the propriety of the award of attorneys' fees, we declined to review whether the court abused its discretion in its decision that the case was "exceptional" within the meaning of 15 U.S.C. § 1117(a). Instead, we ordered the court "to re-examine its award on remand in light of Jenkins' diminished success following this appeal." 914 F.2d at 458.
 
 
 25
 On remand, the magistrate recommended that the amount of attorneys' fees initially awarded not be reduced. First, he found that Jenkins was still a "prevailing party," as his success was "diminished" only by the dollar amount of the monetary damages awarded, while all the equitable relief sought was granted. Next, he considered whether the case remained "exceptional." The magistrate recognized that a finding that Brittingham's conduct was "fraudulent, deliberate or willful" would support the recovery of attorneys' fees, citing Quality Inns Int'l v. McDonald's Corp., 695 F. Supp. 198, 222 (D. Md. 1988). See also Scotch Whisky Assoc. v. Majestic Distilling Co., 958 F.2d 594, 599 (4th Cir. 1992) (to recover attorneys' fees, prevailing plaintiff must show that defendant acted in bad faith).
 
 
 26
 Because the district judge had found that fraud was perpetrated by Brittingham in applying to register the trademark, and because the Fourth Circuit "specifically did not address the question of fraud," the magistrate concluded that the district judge's finding of fraud "remains the law of this case." In that finding, he almost certainly erred.[4] Nevertheless, the magistrate made further findings to support the conclusion that the case was "exceptional." The magistrate, citing 914 F.2d at 455, noted that we had acknowledged that Brittingham "intentionally" copied the trademark for use in other locations; that supported our affirmance of the district court's conclusion that Brittingham had infringed Jenkins' right to exclusive use of the mark THRASHER'S. The magistrate also emphasized that Brittingham's use of the trademark continued for five and a half years after the 1983 trial at which Mrs. Hastings had testified that she had not intended to transfer ownership of the trademark to Brittingham. In our opinion, in discussing the evidence that Brittingham may at one time have held a bona fide belief as to his ownership of the mark, we had nonetheless suggested that the testimony of Mrs. Hastings at the 1983 trial was the point in time after which Brittingham could no longer have sustained that good faith belief. 914 F.2d at 456-57. Therefore, the magistrate concluded that Brittingham's actions "demonstrate[d] a deliberate and willful pattern of conduct" that makes the case"exceptional" and permits recovery of attorneys' fees for the period prior to August 14, 1989.
 
 
 27
 The magistrate then concluded that the amount of attorneys' fees awarded should not be reduced at all, even though we had remanded for reconsideration of fees "in light of Jenkins' diminished success." Because Jenkins obtained all of the relief sought-Brittingham's trademark registrations were invalidated and Jenkins was determined to own an exclusive right to use the mark-and lost only part of the monetary damages that had been awarded, the magistrate did not recommend any reduction in the attorneys' fees. The district judge adopted the magistrate's recommendation that there should be an award of attorneys' fees, and also his recommendation as to amount. As to the fees awarded for the period prior to the first appeal, we are unable to conclude that there has been clear error or an abuse of discretion. Therefore, we affirm the award of attorneys' fees and costs for the period preceding the first appeal, i.e., up to the August 14, 1989 order of the district court. However, as discussed in Part I, we reverse the award of attorneys' fees for the first appeal and proceedings on remand, i.e., for the period after August 14, 1989.
 
 AFFIRMED IN PART AND REVERSED IN PART
 
 
 [1]
 Other parties were added in an amended complaint. "Brittingham" will be used to refer to all of the plaintiffs/counter-defendants (appellants) and "Jenkins" will be used to refer to all of the defendants/counter-plaintiffs (appellees)
 
 
 [2]
 That amount represents the reduction of $646,079.82 in profits and our reversal of $228,714.18 in prejudgment interest
 
 
 [3]
 That statement in our factual summary of the case concerning the situation in the summer of 1975 is not necessarily irreconcilable with the district court's findings of fraud. Its factual findings as to fraud were focused on whether Brittingham believed that he had a clear claim to the mark at the time that he submitted his application for registration in December 1975. With that application, Brittingham stated in an affidavit that to the best of his knowledge and belief, no other person, firm, corporation or association had the right to use the mark THRASHER'S in commerce. See 914 F.2d at 453
 
 
 [4]
 E.g., Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991) ("Law of the case ... merely requires a trial court to follow the rulings of an appellate court. It does not constrain the trial court with respect to issues not actually considered by an appellate court ... and thus has long been held not to require the trial court to adhere to its own previous rulings if they have not been adopted, explicitly or implicitly, by the appellate court's judgment") (footnote and citations omitted)